EULA FIELDS v. L. T. FIELDS, JR.

197 So. 530
Special Division A
Opinion Filed August 2, 1940

*Thomas Sale,* for Appellant;

*J. M. & H. P. Sapp* and *A. M. Douglas,* for Appellee.

Thomas, J.—Concluding a suit for divorce by the wife against the husband the chancellor entered a decree granting the relief sought and disposed of the care and custody of three small children of the parties now aged three, five and

seven years, respectively, by awarding them to the husband's father, until further order of the court, with permission for the mother to visit them without interference on the part of the husband.

Inasmuch as no complaint is made of the provisions of the final order except those dealing with the issue of the union, we will ignore its other features.

A considerable portion of the briefs is devoted to a discussion of the comparative worth of the paternal grandparents of the children and their mother's relations, with whom she resides, and of their relative financial condition but our main concern is the moral stability of the parents to properly rear their offspring and their financial ability to discharge this obligation.

The adjudication in favor of the complainant who charged her husband with extreme cruelty did not place upon him the stigma of unfitness to enjoy the association of his daughters and son, nor did the testimony of epithets applied to the husband by the wife before their separation mark her as morally incapable of the upbringing and companionship of the children she bore or unable to meet the responsibility for which nature prepared her.

While we have said that the "welfare (of children) becomes paramount to that of the comforts, desires and welfare of either or both of the parents" (Kennnedy v. Kennedy, 101 Fla. 239, 245, 134 South. Rep. 201, 203) we have also held that "The statutes of this state recognize the natural, inherent and consequently legal right of parents to have the custody of their children." (Frazier v. Frazier, 109 Fla. 164, 168, 147 South. Rep. 464, 466.) It was further stated in Kennedy v. Kennedy, *supra,* that to this paramount consideration for the well-being of the child the

rights and wishes of the parents will not be subordinated unless the latter are "opposed" to the former.

The financial worth of persons, other than the parents, to whom children may be awarded is important only when it appears that the parents themselves are unable to provide the necessities of life and prevent their children from becoming the objects of charity and a charge upon the community.

The matter of custody cannot be placed upon any of the bases, welfare of the children, financial worth of the ones seeking their custody or desires of the parents without some regard for the others. For instance, if the decision were to be based alone on comparative wealth of parents and others being considered for the award, or on the welfare of the infant, custody could be taken from parents rich in affection but poor in worldly goods and placed with others favored because more fortunate in the accumulation of material things, hence more able to provide or able to provide more.

If the wishes of the parents were paramount they could secure custody even if profligate or devoid of moral standards.

In this case the income of the husband's father exceeds that of the son or the son's divorced wife, therefore, on that score alone he could give the children a better home than either of their parents and to that extent the welfare of his charges would be enhanced.

Nothing in the record reflects any discredit on the moral character of the grandparents or of the relatives of the wife with whom she is living and where, if the children are awarded her, they will live for the present time. Nor do we find any unusual conduct shown on the part of the parents save that of the peculiar bitterness which develops

when the love of one spouse for another turns to hate and which is dispelled or at least becomes dormant when they cease to meet and this misbehavior is not of such degree as would defeat their right to their children.

One other aspect of this controversy which impels us to the belief that the mother and father should share the custody, the former for the greater part of the time, is the extreme youth of the children. We incline to the view of the Supreme Court of Alabama that "Other things being equal, * * * the mother of infants of tender years (is) best fitted to bestow the motherly affection, care, companionship, and early training suited to their needs." Gayle v. Gayle, 220 Ala. 400, 402, 125 South. Rep. 638, 639.

So, reluctant as we are to disturb the chancellor's ruling, it is our decision (1) that the decree be amended to place the youngest child in the custody of the mother; (2) that the others be placed in her custody except during the months of June, July and August when they shall be in the custody of the father; (3) that the chancellor require such bond of the mother as he shall determine, not exceeding one thousand dollars, conditioned that she will abide by the order of the court if the children be kept by her beyond the boundaries of the State of Florida, (4) that either parent may visit the children at reasonable times while they are in the custody of the other; and (5) that the decree shall be effective until changed circumstances and the ends of justice require its amendment.

It is so ordered.

TERRELL, C. J., and CHAPMAN, J., concur.

BUFORD, J., concurs in opinion and judgment.

Justices WHITFIELD and BROWN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.