Harold E. Wondsel v. Commissioner.
Wondsel v. Commissioner
Docket No. 3414-62.
United States Tax Court
T.C. Memo 1964-213; 1964 Tax Ct. Memo LEXIS 124; 23 T.C.M. (CCH) 1278; T.C.M. (RIA) 64213; August 12, 1964
Gerald H. Ullman, 120 Broadway, New York, N. Y., for the petitioner. Rudolph J. Korbel, for the respondent. FAY
Memorandum Opinion FAY, Judge: The Commissioner determined deficiencies in petitioner's income tax as follows: Calendar Year
Deficiency
1957
$6,000.76
1958
6,681.55
1959
5,583.72
The issues for decision are: 1. Whether payments made by Harold E. Wondsel to May White Wondsel during the years 1957, 1958 and 1959 are deductible in computing his taxable income for those years. 2. Whether payments made by Harold E. Wondsel to Virginia Wondsel during the years 1957, 1958 and 1959 are deductible in computing his taxable income for those years. 3. Whether Harold E. Wondsel and Joyce Wondsel were entitled to file joint Federal income tax returns for the years 1957, 1958 and 1959. 4. Whether Harold E. Wondsel is entitled to a $600 exemption for Joyce Wondsel in each of the years 1957, 1958 and 1959. [1]
All of *126 the facts have been stipulated and are so found. Harold E. Wondsel (hereinafter referred to as petitioner) and Joyce Wondsel (hereinafter referred to as Joyce) filed joint Federal income tax returns for the years 1957 and 1958 with the district director of internal revenue, Upper Manhattan District, New York, and for the year 1959 with the district director of internal revenue, Manhattan District, New York. Petitioner and May White Wondsel (hereinafter referred to as May) were married in Yonkers, New York, on July 2, 1927. There was no issue of this marriage. On November 16, 1936, in the City of New York, petitioner and May entered into a written separation agreement which provided inter alia (1) for the payment by petitioner to May of the sum of $65 per week for maintenance and support; (2) for an irrevocable life insurance policy to be maintained by petitioner in the amount of $5,000 for the benefit of May; and (3) that in the event of the entering of any judgment or decree of absolute divorce, the terms and conditions of the written separation agreement relative to maintenance and support and such other provisions as may be pertinent, at the election of May, should be incorporated *127 therein. On November 8, 1937, the following decree was issued by the Circuit Court of the Eleventh Judicial Circuit of Florida, in and for Dade County: IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT OF FLORIDA, IN AND FOR DADE COUNTY. IN CHANCERY. Harold Everett Wondsel, Plaintiff, v. May White Wondsel, Defendant. No: 50453 FINAL DECREE OF DIVORCE This cause coming on this day to be heard upon the motion of the plaintiff for the entry of a final decree herein, and the Court being fully advised in the premises, and having read the report of the Special Master filed in this cause, and having read the Bill of Complaint, and it appearing to the Court that a Decree Pro Confesso was duly entered in this cause against May White Wondsel on the 1st day of November, A.D., 1937, and it further appearing that the Court has jurisdiction of the parties hereto and of the subject matter hereof, and that the allegations of the Bill of Complaint have been proven and that the equities are with the plaintiff. IT IS THEREFORE ORDERED, ADJUDGED AND DECREED, that the bonds of matrimony now and heretofore existing between the plaintiff, Harold Everett Wondsel, and the defendant, May White *128 Wondsel, be the same hereby dissolved and set aside that the plaintiff and defendant be granted a divorce, a [*] matrimonii, each from the other. IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the plaintiff, Harold Everett Wondsel, shall pay to the defendant, May White Wondsel, the sum of sixty-five dollars ($65.00) per week until the defendant, May White Wondsel, shall remarry, or for so long as she shall live, or until further orders of the Court. IT IS FURTHER ORDERED, ADJUDGED AND DECREED THAT the plaintiff, Harold Everett Wondsel, shall maintain and carry an insurance policy in the sum of five thousand dollars ($5,000), payable to the said defendant, May White Wondsel. DONE AND ORDERED IN CHAMBERS, in Miami, Dade County, Florida, this 8th day of November, A.D., 1937. [signature illegible] CIRCUIT JUDGE On February 7, 1947, petitioner voluntarily increased the payment to May to $80 per week. The agreement by petitioner to increase the payment was oral. Throughout the years in issue petitioner has paid $65 per week to May pursuant to the Florida decree and $15 per week pursuant to his voluntary oral agreement. Petitioner has deducted the amount of $80 on his returns *129 for said years. May has declared the amount of $65 per week as income and paid the tax due thereon in each of the years involved. On May 11, 1939, petitioner and Virginia Wondsel (hereinafter referred to as Virginia) went through a marriage ceremony in the City of Greenwich, State of Connecticut. There was no issue of this marriage. Petitioner and Virginia resided in New York until 1943 when they moved to New Jersey. They resided in New Jersey until their separation on February 21, 1946. On February 6, 1941, the following order was entered by the Supreme Court of the State of New York, in the County of New York, upon the default of petitioner and Virginia: At a Special Term, Part 2, of the Supreme Court of the State of New York, held in the County of New York, at the County Court House, Pearl and Centre Streets, in the Borough of Manhattan, in said County, on the 6 day of February, 1941. Present: Honorable Morris Eder Justice. Mae White Wondsel, Plaintiff, against Harold E. Wondsel and "Virginia" Lillis, (first name "Virginia" being fictitious, said defendant's true name being unknown to plaintiff), Defendants. The summons and verified complaint herein having been duly *130 served on the defendant Harold E. Wondsel, on the 28th day of May, 1940, as appears more fully by the affidavit of Louis Lipshitz sworn to May 28, 1940, which is annexed to the original summons and verified complaint; and the summons and verified complaint herein having been duly served upon the defendant "Virginia" Lillis (first name "Virginia" being fictitious, said defendant's true first name being unknown to plaintiff) on the 3rd day of June, 1940, as appears more fully by the affidavit of Ruth Coombs sworn to June 4, 1940, which is annexed to the original summons and verified complaint; and it appearing that the time for either of the said defendants to appear or plead or make any motion addressed to the complaint has expired, and that said defendants have failed to appear or plead or make any motion addressed to the complaint, and that the time of the defendants to appear or plead or make any motion addressed to the complaint has not been extended by stipulation or otherwise, and that said defendants are in default; and the costs of this action having been duly taxed, it is On motion of O'Brien, Driscoll & Raftery, attorneys for the plaintiff. ORDERED, ADJUDGED AND DECREED *131 that plaintiff Mae White Wondsel of 2 Horatio Street, New York City, have judgment against the defendant Harold E. Wondsel of 1560 Broadway, New York City, and defendant "Virginia" Lillis (first name "Virginia" being fictitious, said defendant's true first name being unknown to plaintiff), of 40 Orienta Point Apartments, Mamaroneck, New York, by default for the relief demanded in the complaint and it is further ORDERED, ADJUDGED AND DECREED that plaintiff Mae White Wondsel is the lawful wife of the defendant Harold E. Wondsel; and it is further ORDERED, ADJUDGED AND DECREED that an alleged divorce purported to have been procured by the defendant Harold E. Wondsel from the plaintiff Mae White Wondsel in the State of Florida is null and void and of no force and effect in law; and it is further ORDERED, ADJUDGED AND DECREED that the alleged marriage between the defendant Harold E. Wondsel and the defendant "Virginia" Lillis (first name "Virginia" being fictitious, said defendant's true first name being unknown to plaintiff) is null and void and of no force and effect, and that said defendants are not and never have been husband and wife; and it is further ORDERED, ADJUDGED AND *132 DECREED that the plaintiff Mae White Wondsel of 2 Horatio Street, New York City, have judgment against the defendants Harold E. Wondsel of 1560 Broadway, New York City, and "Virginia" Lillis (first name "Virginia" being fictitious, said defendant's true first name being unknown to plaintiff), of 40 Orienta Point Apartments, Mamaroneck, New York, for $33.75 costs of this action, and that plaintiff have execution therefor. Enter, M.E., J.S.C., ARCHIBALD R. WATSON, Clerk May was at all times a resident of New York. On February 21, 1946, petitioner and Virginia entered into a written separation agreement which provided, inter alia, for the payment by petitioner to Virginia of the sum of $200 per month for her maintenance and support. The agreement further provided: Fourth: Each of the parties reserves the right to institute an action for divorce against the other, upon any ground, and in any jurisdiction in which such action may be maintained, and should either party obtain a divorce from the other, the provisions of this agreement shall be recognized as in entire settlement of alimony, dower rights and all other property rights and claims as between the parties hereto; and the *133 provisions of this agreement touching alimony may be presented to the court, and if practice permits, be embodied in the proper interlocutory or final decree of said court fixing the property rights of the parties, but in any event this agreement shall have the same force and effect as though set forth at length in any such order in any such divorce proceedings. On July 5, 1946, the following decree was issued by the Circuit Court of the Eleventh Judicial Circuit of Florida, in and for Dade County: IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT OF FLORIDA IN AND FOR DADE COUNTY IN CHANCERY CAUSE #100991 Harold E. Wondsel, Plaintiff, v. Virginia Lillis Wondsel, Defendant. Final Decree of Divorce This cause coming on this day for final hearing upon the master's report filed herein, and the Court having considered the same and being of the opinion that the recommendations of the master should be confirmed, it is considered ORDERED, ADJUDGED AND DECREED by the Court (1) That the Court has jurisdiction of the parties and the subject matter of this cause, and that the plaintiff has resided in Dade County, Florida, for more than ninety days next preceding the institution *134 of suit herein. (2) That the equities of this cause are with the plaintiff and that the plaintiff, by proper and competent testimony, has maintained the allegations, and each of them severally, of the bill of complaint. (3) That the bond of matrimony now and heretofore existing between the plaintiff, Harold E. Wondsel, and the defendant, Virginia Lillis Wondsel, be and the same is hereby dissolved, and the plaintiff and the defendant are each from the other granted a divorce a vinculo matrimonii. (4) The parties hereto having entered into a written property settlement agreement, copy of which was introduced in evidence herein, the Court finds that said agreement is a fair and equitable one and hereby approves it in each and every of its provisions. DONE, ORDERED, ADJUDGED and DECREED in Chambers in Miami, Florida, this 5th day of July, A.D. 1946. George E. Holt Circuit Judge During the years 1957, 1958 and 1959 petitioner paid to Virginia the sum of $200 per month pursuant to the aforesaid decree of the Florida court and deducted said amounts on his returns for those years. Virginia declared the amounts received as income in the years 1957, 1958 and 1959 and paid the *135 income tax due and owing thereon. Following the decree of July 5, 1946, issued by the Florida court, petitioner and Joyce went through a marriage ceremony on October 3, 1946, in the town of Ho-Ho-Kus, State of New Jersey, and thereafter lived in New Jersey for two years. In 1948 petitioner and Joyce moved to Stamford, Connecticut, and lived there for two years. Petitioner and Joyce moved to New York in 1950 and have resided therein continuously, including the years in issue in this proceeding. There is one issue of said marriage, Harold E. Wondsel, Jr. This marriage was annulled by order of the Supreme Court, Westchester County, New York, on July 26, 1961, on the ground that petitioner was still married to May. Respondent, in the statutory notice of deficiency, has disallowed any deduction for the payments made to May and Virginia by petitioner and has computed his income tax for all years in issue on the basis of his being a married man filing a separate return. Issues 1 and 2. Alimony deduction. Petitioner maintains that his payments to both May and Virginia are deductible under section 215 of the Internal Revenue Code of 1954. [2] If the amounts paid *136 to May and Virginia under the two separation agreements are includible in their gross income, then the amounts are deductible by petitioner. Section 215. Whether or not the amounts paid to May and Virginia by petitioner are includible in their gross income is determined under the provisions of section 71(a)(1). [3]
SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (a) General Rule. - (1) Decree of Divorce or Separate Maintenance. - If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to *137 such divorce or separation. Accordingly, the amounts paid to May and Virginia by petitioner are includible in their gross income if said amounts were paid in discharge of a legal obligation imposed upon petitioner by a decree of divorce or of separate maintenance under which petitioner was divorced or legally separated from May and Virginia or incurred by petitioner under a written instrument incident to such a divorce or legal separation. Ruth Borax, 40 T.C. 1001 (1963), on appeal (C.A. 2, July 8, 1964). Petitioner does not argue that the payments made to both May and Virginia were made under a decree of separate maintenance or under a written instrument incident to such a decree of separate maintenance. His only contention is that the payments were made under a decree of divorce or under a written instrument incident to such a decree. Respondent, on the other hand, maintains that petitioner's divorce from May obtained in Florida was declared null and void by a court of the State of New York and, accordingly, the payments made to May were not made pursuant to any decree of divorce or under a written agreement incident to such a decree of divorce. Regarding the payments *138 to Virginia, respondent contends that if petitioner was never legally divorced from May, any payments to Virginia could not have been paid under a legal obligation imposed upon petitioner by a decree of divorce. We agree with respondent in both cases. There is no doubt here that both the payments to May and Virginia were made pursuant to a written instrument. However, payments made pursuant to a voluntary written separation agreement executed prior to the enactment of the Internal Revenue Code of 1954 are not includible in the income of the recipient or deductible by the payor unless they are incident to a decree of divorce or of legal separation. Smith v. Commissioner, 168 F. 2d 446 (C.A. 2, 1948); Herman Borax, 30 T.C. 817 (1958); and Estate of Daniel Buckley, 37 T.C. 664 (1962). The decree of divorce, as contemplated by the statute, must create a valid status of divorce. Ruth Borax, supra.Therefore, the question to be decided is whether the payments were made pursuant to a written instrument incident to a decree of divorce which created a valid status of divorce. Petitioner and May were married in New York in 1927. They *139 were separated in 1936 and at that time executed a written separation agreement. Petitioner obtained a divorce in the State of Florida in November 1937, which decree provided for the payment by petitioner of $65 per week to May. In May 1939 petitioner went through a marriage ceremony with Virginia in Connecticut. Petitioner and Virginia resided in New York until 1943. In May 1940, when petitioner, Virginia, and May were residents of New York, May started a proceeding in the New York Supreme Court to have the Florida divorce declared a nullity, to have herself declared the lawful wife of petitioner and to have petitioner's marriage to Virginia declared void. On February 6, 1941, the Supreme Court of the State of New York issued an order declaring that the Florida divorce was a nullity, that petitioner's marriage to Virginia was void and that May was the lawful wife of petitioner. On these facts we do not believe that the Florida decree was valid to create a status of divorce between petitioner and May. This being the situation, the payments made by petitioner to May were not in discharge of a legal obligation imposed on him by a decree of divorce nor pursuant to a written instrument *140 incident to such a decree. At all times material to this case, May was a resident of New York. At the time the Supreme Court of New York issued its decree, petitioner and Virginia were residents of New York. Therefore, the State of residence of petitioner, Virginia, and May has declared the Florida divorce decree a nullity and has declared that May is the lawful wife of petitioner. We have often held that where the language of a Federal tax statute depends upon the marital status of the parties, State law controls. Kenneth T. Sullivan, 29 T.C. 71 (1957), affd. 256 F. 2d 664 (C.A. 4, 1958). Marriage, its existence and dissolution, is particularly within the province of the States. Marriner S. Eccles, 19 T.C. 1049 (1953), affd. per curiam 208 F. 2d 796 (C.A. 4, 1953). Here we look to the laws of New York, the residence of both petitioner and May, to determine the marital status of the parties. Albert Gersten, 28 T.C. 756 (1957), affd. on this issue 267 F. 2d 195 (C.A. 9, 1959). This case is not unlike the case of Ruth Borax, supra, wherein the husband and his first wife were married in New *141 York. A separation agreement was entered into and subsequently the husband obtained a Mexican divorce, remarried in Mexico and then returned to reside in New York with his second wife. All parties concerned were residents of New York. His first wife obtained a declaratory judgment from the Supreme Court of New York declaring the nullity of the Mexican divorce, declaring the second marriage void and declaring her the lawful wife of the husband. We stated there: Where as here all the parties in interest reside in the State of New York and a Court of that State, having jurisdiction of the parties, has ruled on the marital status of the parties, we think the decision of that Court is controlling for our purposes here, and we so conclude. Accordingly, we hold that the payments made by petitioner to May [4] during the years here involved were not periodic payments made in discharge of a legal obligation imposed upon petitioner under a decree of divorce or under a written instrument incident to such a decree and as such are not deductible by petitioner. [5]
*142 Petitioner relies heavily upon the case of Feinberg v. Commissioner, 198 F. 2d 260 (C.A. 3, 1952), reversing 16 T.C. 1485 (1951), as did the taxpayer in Ruth Borax, supra, wherein the Circuit Court stated: The mere fact that the marital domicile of the parties did not recognize the Florida divorce does not render it a nullity for Federal income tax purposes. The Feinberg case was distinguished by this Court in Ruth Borax, supra, on grounds which are equally applicable here. We are not dealing with merely the State of "marital domicile," the place of residence of husband and wife during their marriage, as was the situation in Feinberg, but in addition thereto the State of residence of all the interested parties at the time of the institution of the action in the New York courts. We agree with petitioner when he says that the statute here involved is remedial and should be liberally construed. However, there is no reason for concluding, as petitioner does, that the statute should be construed liberally in favor of the husband as against the wife. Mandel v. Commissioner, 185 F. 2d 50 (C.A. 7, 1950), affirming a *143 Memorandum Opinion of this Court. The decree of the Supreme Court of New York declared that petitioner was never lawfully divorced from May and that his marriage to Virginia was void. Therefore, by virtue of said decree, any payments made by petitioner to Virginia were not in discharge of a legal obligation which was imposed upon petitioner because of a marital relationship. A status of marriage never existed. Accordingly, for this added reason, as well as for those reasons previously stated regarding the payments to May, we hold that petitioner cannot deduct the payments made to Virginia during the years here in issue. Ruth Borax, supra; Estate of Daniel Buckley, supra.
By our holding we are not looking to State law to determine what is income, as is claimed by petitioner. We agree that Federal law determines what is income. Daine v. Commissioner, 168 F. 2d 449 (C.A. 2, 1948) affirming 9 T.C. 47 (1947). But where the Federal statute involved requires a determination as to whether a status of divorce existed, and there being no body of Federal law on this subject, resort to State law is not only appropriate, Ruth Borax, supra; *144 John J. Untermann, 38 T.C. 93 (1962), but was also contemplated by Congress.[6]
Issue 3. Joint Return. The third issue is whether petitioner and Joyce are entitled to file joint returns for the years 1957, 1958 and 1959. Section 6013 provides that a husband and wife may file a joint return. Therefore, it is necessary to determine whether petitioner and Joyce were husband and wife within the meaning of section 6013. We have said before that respondent has not only the right but the duty of determining whether a man and woman who file a joint return are, in fact, legally married and entitled to file such a return under the provisions of the statute. Albert Gersten, supra; and John J. Untermann, supra.Although petitioner and Joyce lived together as husband *145 and wife, if they are not legally married because of some impediment to a legal marriage, whether on the part of petitioner or Joyce, they cannot file a jointreturn. Ruth Borax, supra.Much of what we said regarding issues 1 and 2 is appropriate here. The marital status of the parties is a matter left to the decision of the State where all the parties reside. Ruth Borax, supra.
During the years in issue, petitioner and Joyce resided in New York. At that time May was a resident of New York. The New York Supreme Court, by a decision handed down in 1941, declared petitioner's marriage to Virginia void and declared that May was the lawful wife of petitioner. If petitioner's marriage to Virginia was void because of his prior undissolved marriage to May, then it must follow that petitioner's marriage to Joyce was also void. This is borne out by the fact that Joyce obtained an annulment of the marriage from the Supreme Court of New York on July 26, 1961, on the grounds that petitioner was still married to May. Accordingly, we hold that under the laws of New York, the State of residence of all parties concerned, petitioner and Joyce were not husband and wife *146 and, therefore, petitioner was not entitled to file a joint return with Joyce for the years in issue. Ruth Borax, supra; Estate of Daniel Buckley, supra.
Issue 4. Dependency Exemption. When respondent determined that petitioner could not file a joint return with Joyce for the years in issue, he computed petitioner's tax liability on the basis of a married man filing separately. The respondent did not allow petitioner a dependency exemption for Joyce. We must agree with respondent. Since we have already determined that petitioner and Joyce were not husband and wife, a dependency exemption would be allowed petitioner only if Joyce qualified as a dependent under section 152. A dependency exemption is never permitted for an individual whom the taxpayer is maintaining in violation of local law. Leon Turnipseed, 27 T.C. 758, 760 (1957). It being stipulated that petitioner and Joyce lived together as husband and wife in New York during the years in issue and we having held that under New York law petitioner was not legally married to Joyce, the dependency exemption for Joyce was properly denied. John J. Untermann, supra; section 152(b)(5). *147 Decision will be entered for the respondent. Footnotes
1. Petitioner has conceded all other adjustments determined by respondent in his notice of deficiency.↩
2. All section references are to the Internal Revenue Code of 1954 unless otherwise indicated. ↩
3. Since the two separation agreements herein involved were executed prior to the enactment of the 1954 Code, only sec. 71(a)(1) can be applicable.↩
4. In view of the position we take, it is not necessary to treat the $65 and the $15 paid to May separately. ↩
5. Petitioner makes no argument that if we hold the Florida decree to be invalid to create a status of divorce that it might be sufficient to create a status of legal separation, whereupon the payments made might still be deductible. In fairness to petitioner we have examined the laws of Florida. F.S.A. §§ 65.03, 65.09, 65.10. The question as to whether a Florida court can issue a decree creating a legal status of separation within the meaning of § 71(a) is, at most, doubtful. Compare Legget v. Commissioner, 329 F. 2d 509 (C.A. 2, 1964), reversing 39 T.C. 1022 (1963) with Hieber v. Hieber, 151 So. 2d 646 (Fla. 1963). However, we need not get to that question in this case. In the two situations where Florida will give a wife alimony without a divorce, F.S.A. §§ 65.09 and 65.10, the wife must show she has grounds for divorce or is living apart from her husband through no fault of her own. See Stone v. Stone, 151 So. 2d 301↩ (Fla. 1963). There has been no evidence introduced regarding whether or not May had any grounds for divorce under Florida law. Accordingly, we conclude that the decree in this case would not be sufficient to create a status of legal separation.
6. Congress, in writing sec. 71(a)(1) and its predecessor sec. 22(k), I.R.C. 1939, took occasion to require the intervention of some judicial sanction for alteration in the marital status in at least three places. This indicates the necessity to look to State law for a determination of the presence or absence of such judicial sanction. Cf. Charles L. Brown, 7 T.C. 715↩ (1946).